# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINE L. LINE, | CIVIL NO. 1:25-CV-01477 |
| Plaintiff, | |
| v. | (Judge Mehalchick) |
| FARMERS AND MERCHANTS TRUST CO. d/b/a F&M TRUST as subsidiary of FRANKLIN FINANCIAL SERVICES CO. and SCOTT D. EHRIG, individually and in his capacity as Senior Vice President, Chief Wealth Management Officer for F&M Trust, | (Magistrate Judge Latella) |
| Defendants. | |

## REPORT AND RECOMMENDATION

Plaintiff Christine L. Line's estranged husband,[1] Defendant Scott

D. Ehrig, managed her retirement accounts in his capacity as Senior

Vice President and Chief Wealth Management Officer at Defendant

F&M Trust.  Plaintiff alleges that Ehrig photographed her personal

prescription medication and uploaded the photographs on F&M Trust's

---

[1] At the time that the Complaint was filed the parties were in divorce proceedings; it is unclear whether those proceedings have finalized.

1

server.  Plaintiff maintains that Ehrig intended to use these photographs during their divorce proceedings.  She brings this action citing two federal statutes and raises three claims under Pennsylvania law.  Plaintiff asserts that this Court has jurisdiction based on both federal question and diversity jurisdiction.  According to the Complaint, all parties to this action, however, are citizens of Pennsylvania so diversity of citizenship does not exist.  The two federal statutes cited in the Complaint do not provide for private causes of action (and Plaintiff acknowledges as much) so no federal question is present either.  Because this Court does not have subject matter jurisdiction to entertain the claims brought in the Complaint, it will be recommended that it be dismissed.  However, it will be recommended that all claims be dismissed without prejudice and Plaintiff given an opportunity to amend her Complaint or pursue her claims in state court.

## I.    Procedural History

The Plaintiff initiated this action by filing a Complaint, *pro se*, on August 8, 2025.  (Doc. 1).  The Defendants filed separate Motions to Dismiss on October 7, 2025.  (Docs. 8 and 9).  Separate briefs in support of the Motions were filed on October 21, 2025.  (Docs. 11 and 12).

2

Plaintiff filed a document entitled "Answer to Statement of Facts" in response to each Motion on October 21, 2025.  (Docs. 13 and 14).  On November 7, 2025, Defendant Ehrig filed a letter noting that Plaintiff had not yet filed a brief in opposition to the Motion to Dismiss and that the time for doing so had expired.  (Doc. 16).  Accordingly, pursuant to Local Rule 7.6, Defendant requested his Motion to be deemed unopposed.  (*Id.*).  On that same day, November 7, 2025, the Plaintiff filed briefs in opposition to each Motion to Dismiss.  (Docs. 17 and 18).  In a footnote in both briefs, Plaintiff acknowledged that the briefs were filed three days late but noted that the responses were timely filed and that the delay in filing was excusable.  On November 10, 2025, Defendant Ehrig filed a reply brief in support of his Motion.  (Doc. 19).  By Order filed of even date with this Report and Recommendation Plaintiff's briefs were deemed as timely filed.  (Doc. 21).  Both Motions to Dismiss are ripe for disposition.

## II.   Background

Plaintiff and Defendant Ehrig were married during the time frame relevant to this action but later separated and were involved in divorce proceedings at the time of the filing of the Complaint.

(Complaint, Doc. 1, ¶ 2). Ehrig managed Plaintiff's retirement accounts held at Defendant F&M Trust where he was a Senior Vice President, Chief Wealth Management Officer. (*Id.* at ¶¶ 1, 16). "On or about August 8, 2023, Plaintiff became aware that at least 53 (fifty-three) photographs of her personal prescription medications were taken by Defendant Ehrig and uploaded onto Defendant F&M Trust as subsidiary of Franklin Financial Services corporation's e-mail/network server. The photographs include information that is legally protected from disclosure including, *inter alia*, the medication name, dosage, reason for use, and prescribing physician." (*Id.* at ¶ 3). Plaintiff was unaware that Ehrig took the photographs but "was later informed by Defendant Ehrig that they would be used in forthcoming divorce proceedings with the intent to malign and/or besmirch the Plaintiff's character and reputation." (*Id.* at ¶ 4). Plaintiff alleges that taking photographs and placing them on F&M Trust's server was done without her consent or knowledge. She avers that she informed F&M Trust of this situation and demanded that the photographs be removed but received no confirmation that the medical information was destroyed. (*Id.* ¶¶ 7-8). The Complaint references various federal and state

4

statutes that protect private medical information and asserts that the uploading of the photographs violated these privacy provisions as well as various banking regulations.

## III.  Discussion

The Complaint brings five claims for relief.  The first two are based on federal statutes.  These statutes, the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, and the Federal Communication Act, 15 U.S.C. § 45(a), however, do not provide a basis for a private cause of action. Three claims are brought under Pennsylvania law, *viz.*, breach of Personal Information Notification Act, 73 P.S. §§ 2301-2323; alternatively violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, common law Breach of Contract and common law Intentional Infliction of Emotional Distress.

Defendant Ehrig mounts a facial challenge to the existence of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and also asserts that the Complaint fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Defendant F&M Trust moves to dismiss based on Rule 12(b)(6) for failure to state a claim.

## A.     Rule 12(b)(1) Dismissal Standard

Under Federal Rule of Civil Procedure 12(b)(1), the Court dismisses a complaint if it lacks the "very power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "If a party asserts several objections and defenses to a complaint, including a F.R.C.P. 12(b)(1) defense for lack of subject matter jurisdiction, 'the cases are legion stating that the district court should consider the Rule 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined by the judge.'" *Scanlin v. Soldiers & Sailors Mem'l Hosp.*, No. 4:06-CV-01915, 2007 WL 141014, at *2 (M.D. Pa. Jan. 17, 2007) (citing 5B Wright & Miller, Federal Practice and Procedure: Civil 3d § 1350 at 154-55 (2004)); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

A defendant may challenge the existence of subject matter jurisdiction in one of two fashions: it may attack the complaint on its face or it may attack the existence of subject matter jurisdiction in fact, relying on evidence beyond the pleadings. *See Gould Elecs. Inc. v.*

*United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed.*

*Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  A district court

has to first determine, however, whether a Rule 12(b)(1) motion

presents a "facial" attack or a "factual" attack on the claim at issue,

because that distinction determines how the pleading must be reviewed.

*In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)

(citing *Mortensen*, 549 F.2d at 891).

Where a defendant attacks a complaint as deficient on its face,

"the court must consider the allegations of the complaint as true."

*Mortensen*, 549 F.2d at 891.  "In deciding a Rule 12(b)(1) facial attack,

the court may only consider the allegations contained in the complaint

and the exhibits attached to the complaint; matters of public record

such as court records, letter decisions of government agencies and

published reports of administrative bodies; and 'undisputably authentic'

documents which the plaintiff has identified as a basis of his claims and

which the defendant has attached as exhibits to his motion to dismiss."

*Medici v. Pocono Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL

1006917, at *2 (M.D. Pa. Mar. 16, 2010).  However, when a motion to

dismiss attacks the existence of subject matter jurisdiction in fact, "no

7

presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen,* 549 F.2d at 891. The plaintiff bears the burden of establishing the existence of subject matter jurisdiction when challenged under Rule 12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991).

**B. Standard Applicable in Deciding a 12(b)(6) Motion**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This means that a complaint may be dismissed if it does not present sufficient facts to support a plausible claim: "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen, Inc.,* 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007)).

The court must accept both the plaintiff's allegations and any reasonable inferences that can be drawn as true and construe them in

8

the light most favorable to the non-moving party. *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). However, it need not accept "'unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Reciting the elements that make up a cause of action and supporting them with "mere conclusory statements" is insufficient to give those statements the presumption of truth. *McNeilly v. City of Pittsburgh*, 40 F. Supp. 3d 643, 650 (W.D. Pa. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When faced with a motion to dismiss pursuant to 12(b)(6), a court should conduct a two-part analysis: 1) separate the factual and legal elements of a claim; and 2) "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* (internal citation removed). The court may consider facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellab, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). This analysis requires the court to look at the claims

on a case-by-case basis and rely both "on its judicial experience and common sense." *McNeilly*, 40 F. Supp. 3d at 650. The court will not be reaching legal conclusions, but instead will merely determine "whether the plaintiff should be permitted to offer evidence in support of the allegations." *Id.* (citing *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000)).

## C. Jurisdiction

Defendant Ehrig mounts a facial challenge to the existence of subject matter jurisdiction. For the reasons set forth below, based on the allegations in the complaint, and accepting the factual allegations as true, but not crediting the legal conclusions, the Complaint must be dismissed as the Court is without subject matter jurisdiction to entertain Plaintiff's claims. Each basis for jurisdiction asserted in the Complaint will be addressed separately.

### 1) Diversity Jurisdiction

The "general principles of diversity jurisdiction" were clearly elaborated by the Third Circuit in *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99 (3d Cir. 2015), where our Court of Appeals explained:

The principal federal statute governing diversity jurisdiction, 28 U.S.C. § 1332, gives federal district courts original jurisdiction of all civil actions between citizens of different States where the amount in controversy exceeds $75,000.

For over two hundred years, *the statute has been understood as requiring complete diversity between all plaintiffs and all defendants*, even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, no plaintiff may be a citizen of the same state as any defendant.

Most rules of citizenship are well established. A natural person is deemed to be a citizen of the state where he is domiciled. A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business.

*Id*. at 105 (cleaned up)(emphasis added).  Here, the Complaint makes

the following allegations regarding the citizenship of each of the parties:

Plaintiff, Christine L. Line, is an adult individual residing at 6 Creekside Lane, Camp Hill, Cumberland County, Pennsylvania 17011 and has resided at this address at all relevant times hereto.

Defendant Farmers and Merchants Trust Company d/b/a F&M Trust… is a banking institution and Pennsylvania corporation with a principal place of business located at 20 S. Main Street, Chambersburg, Adams County, PA 17201.

F&M Trust manages over $1.3 billion assets under management throughout Pennsylvania and Maryland.

11

> F&M Trust is a subsidiary of Franklin Financial Services Corporation, a Domestic Business Corporation, with a principal place of business located at 1500 Nitterhouse Drive, Chambersburg, Franklin County, PA 17201.
>
> Defendant Scott D. Ehrig is an adult individual residing at 117 Putnam Way, Mechanicsburg, Cumberland County, PA 17050. At the time of the events described herein, Scott D. Ehrig resided at 6 Creekside Lane, Camp Hill, PA 17011

(Complaint, Doc. 1, ¶¶ 11-15). According to the allegations in the Complaint, all parties are considered citizens of Pennsylvania for purposes of diversity. Plaintiff cites to Magistrate Judge Arbuckle's recitation of the requirements for diversity jurisdiction set forth in a Screening Order that he issued in *Bova v. Brenner*, 1:25-cv-00377 (Doc. 6, filed March 3, 2025) which correctly states: "'As to diversity jurisdiction, complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant.'" (Plaintiff's Briefs in Opposition, Doc. 17, p. 4, Doc. 18. p. 4, quoting *Bova*, at p. 8). Plaintiff asserts, however that: "this Honorable Court maintains diversity jurisdiction as the Defendant Bank and Ehrig in his capacity as Officer for the Bank are entities with significant out of state contacts. Plaintiff pleads in Complaint paragraphs 13-16 that the Defendants manage $1.3 Billion assets

12

between Pennsylvania and Maryland, thus giving rise to the court's diversity jurisdiction." (*Id.*).  Wright and Miller has recognized that "[t]he reality of course is that modern life is characterized by mobility and complexity; individuals and entities often have relations and contacts with more than one state," 13E Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3611 (3d ed. 2009), perhaps informing Plaintiff's understanding regarding diversity jurisdiction here.  However, even if Defendant F&M Trust maintained citizenship for purposes of diversity jurisdiction in both Pennsylvania and Maryland, its Pennsylvania citizenship would destroy diversity jurisdiction in this matter.  Similarly, Defendant Ehrig is a citizen of Pennsylvania.  As the Third Circuit recognized in *Lincoln Ben. Life Co.*, *supra*, for over two centuries the law has been clear that for diversity jurisdiction to exist, ***all*** parties must be diverse.  800 F.3d at 105.  "This means that, unless there is some other basis for jurisdiction, no plaintiff may be a citizen of the same state as any defendant."  *Id.*  Because all parties to this action are citizens of Pennsylvania, complete diversity

does not exist notwithstanding F&M Trust's extensive business dealings in other states.[2]

Plaintiff further argues that Defendant Ehrig posted photographs of her medication on F&M Trust's servers which "offer access to all of the Bank's offices, both in and outside of the Commonwealth of Pennsylvania" and "the act of posting Plaintiff's confidential medical information on the parties' servers is also diverse, as Plaintiff's information is accessible across state lines." (Plaintiff's Briefs in Opposition, Doc. 17, p. 5, Doc. 18. p. 5). This argument goes to the alleged harm giving rise to a cause of action, not the citizenship of the

---

[2] That F&M Trust has "significant out of state contacts" does not vest the Court with diversity jurisdiction. The extent of a corporation's contacts in a forum state would only be relevant in addressing personal jurisdiction, which is not at issue in this matter. "The federal diversity jurisdiction statute provides that 'a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.'" *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010) (quoting 28 U.S.C. § 1332(c)(1)). Take for example Walmart. It is incorporated in Delaware and has a principal place of business in Arkansas; it deemed to be a citizen of those two states and diversity jurisdiction exists when it is sued in Pennsylvania. *See e.g. Cicilioni v. Dickson City Walmart Supercenter*, No. CV 3:15-02293, 2016 WL 3654499, at *2 (M.D. Pa. July 8, 2016). Yet it is hard to imagine a business with more significant contacts in Pennsylvania; the amount of business done in a particular state is not relevant in examining diversity jurisdiction as opposed to personal jurisdiction.

parties.  Jurisdiction based on the cause of action falls within the ambit of federal question jurisdiction which will be addressed next.[3]

## 2) Federal Question Jurisdiction

"Title 28 U.S.C. § 1331 vests in federal district courts 'original jurisdiction' over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689 (2006).  "A case arises under federal law within the meaning of § 1331… if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Id.* at 689–90 (cleaned up).  "Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit.  It is by now well established that the federal question must appear on the face of a well-pleaded complaint.  Federal

---

[3] That conduct "crosses state lanes" would be relevant in analyzing various federal criminal statutes, see e.g. 18 U.S.C. § 922(g) (stating as an element of the offense that a firearm was "ship[ed] or transport[ed] in interstate or foreign commerce, or possess[ed] in or affecting commerce."), or in evaluating Congress's ability to regulate interstate commerce, but the diversity statute's focus is on the citizenship of the parties, not the basis for a cause of action.

jurisdiction cannot be created by anticipating that a defense based on federal law will be filed to a claim based on state law." *Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Philadelphia*, 657 F.2d 29, 32–33 (3d Cir. 1981)(internal citation and quotation omitted).

Looking to the Complaint, the "First Claim For Relief" is based on the Gramm-Leach-Bliley Act (GLBA), 15 U.S. Code § 6801 *et seq.* (Doc. 1, pp. 9-10). In that claim, Plaintiff alleges, *inter alia*, that the GLBA "is the policy of Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customer's nonpublic personal information." (*Id.* at ¶ 49). Plaintiff further allege that the bank and its officer "actively engaged in the unlawful acquisition of protected medical information and further published that information onto the bank's servers" and that "[s]uch conduct is contrary to the intent of the Act's intent to affirmatively and continuously keep client information confidential." (*Id.* at ¶¶ 51-2). Both Defendants assert that because the GLBA does not create a

private cause of action, this claim fails as a matter of law.[4]  (*See* Docs.

11, p. 4; Doc. 12, pp. 5-7).  Defendant Ehrig further argues that for this

reason, federal question jurisdiction does not exist.  In her briefs in

opposition to both Motions to Dismiss, Plaintiff acknowledges that the

GLBA does not create a private cause of action.[5]  (Docs. 17, pp. 5-6; Doc.

18, pp. 5-6).  She asserts, however, that:

---

[4] Defendant Ehrig supports this argument by citing to this Court's
decision in *Laulopez v. Fineline Auto Grp., LLC*, No. 1:23-CV-01241,
2023 WL 7111227, at *5 (M.D. Pa. Oct. 27, 2023) which dismissed a
claim pursuant to the GLBA because it lacked a private right of action,
as well as several cases in this Circuit recognizing the same. (Doc. 12, p.
5-6) (citing *Gray v. Cap. One Fin. Corp.*, No. 25-cv-0925, 2025 WL
1644421, at *5 (E.D. Pa. June 6, 2025) ("The Gramm-Leach-Bliley Act
does not support a private cause of action."); *Hayward v. Sw. Credit
Sys.*, No. 23-cv-3234, 2024 WL 169570, at *2 (E.D. Pa. Jan. 16, 2024)
(Because the GLBA does not provide a private cause of action, any
claims "under it are baseless."); *Ewideh v. Kohl's Dep't Stores Carlisle
Pennsylvania*, No. 1:20-CV-2342, 2022 WL 2181235, at *4 (M.D. Pa.
Feb. 4, 2022), *report and recommendation adopted*, No. 1:20-CV-02342,
2022 WL 1618530 (M.D. Pa. May 23, 2022) ("The Gramm-Leach-Bliley
Act protects the privacy of consumers' personal financial data. 15 U.S.C.
§ 6801 et. seq. However, the Act does not provide a private cause of
action for any alleged violations of its provisions."))

[5] Plaintiff cites language in *Owens-Benniefield v. Nationstar Mortg.
LLC*, 258 F. Supp. 3d 1300 (M.D. Fla. 2017) that acknowledges that
"courts across the country have held that no private right of action
exists for violations of the GLBA, whose text indicates that it is to be
enforced by Federal functional regulators, the State insurance
Authorities, and the Federal Trade Commission." *Id*. at 1318 (cleaned
up).  (Doc. 17, p. 6, n.2; Doc. 18, p.6, n.2).

> Plaintiff cites the Gramm-Leach-Bliley Act not to create a claim or cause of action that the ***federal government*** should have oversight of the Bank's misappropriation of Plaintiff's confidential medical information *visa vis* Senior Trust Officer Ehrig (as notably the Federal Government is not a party to this action), but, rather, to stand for the policy that Defendant Ehrig has a responsibility to oversee and protect the information collected as an officer of the Defendant Bank and to protect that information. Defendant Ehrig as a Senior Trust Officer of the Defendant Bank acted by and on behalf of both himself and the bank in the acquisition of Plaintiff's personal and confidential medical information which, as alleged, *inter alia*, was without a permissible basis in either contract or law.

(*Id.*)(emphasis in the original).  Yet, the First Claim For Relief in the Complaint is pursuant to the GLBA which does not provide for a private cause of action.  While Defendant Ehrig's actions in uploading photographs to the bank's servers might, as Plaintiff asserts have been "without a permissible basis in either contract or law" Plaintiff cannot, as she seems to acknowledge, address that potential wrong through the GLBA as it provides no cause of action for her.  Because the First Claim in the Complaint is pursuant to the GLBA, which all parties, including the Plaintiff, recognize does not provide for a private cause of action, the First Claim should be dismissed.  However, because Plaintiff indicates in her brief that her intention was not to state a claim under the GLBA,

18

she should be afforded the opportunity to file an amended complaint and replead her claim under the appropriate vehicle.

The question then remains whether the claim under the GLBA *as pleaded in this case* should be dismissed based on the lack of jurisdiction or for failure to state a claim. "[T]he line between dismissals based upon Fed. R. Civ. P. 12(b)(1) and 12(b)(6) is often unclear." *Twp. of W. Orange v. Whitman*, 8 F. Supp. 2d 408, 434, n.17 (D.N.J. 1998). Defendant Ehrig asserts that the Court has no jurisdiction, under Rule 12(b)(1); and additionally, that the claim has no merit, pursuant to Rule 12(b)(6). Defendant F&M Trust seeks dismissal only for failure to state a claim pursuant to rule 12(b)(6). The distinction has a difference.[6]

---

[6] The Pennsylvania legislature has envisioned situations where claims erroneously filed in federal court that were dismissed on jurisdictional bases could be brought in state court and the statute of limitations preserved pursuant to Section 5103(b) of the Judicial Code, 42 Pa. C.S. § 5103(b). "Once the federal court dismisses a case for lack of jurisdiction, it is then incumbent upon the litigant to take further action under the statute to move the case to state court. To preserve the timeliness of an action under this statute, a litigant, upon having [a] case dismissed in federal court for lack of jurisdiction, must promptly file a certified transcript of the final judgment of the federal court and, at the same time, a certified transcript of the pleadings from the federal action. The litigant shall not file new pleadings in state court." *Bradley*

To start with the basics, as outlined in Wright and Miller:

> A motion to dismiss an action under Federal Rule of Civil Procedure 12(b)(1) raises the fundamental question of whether the federal district court has subject matter jurisdiction over the action before it, considered to be a "threshold issue" for every federal case. It always must be remembered that the federal courts are courts of limited jurisdiction and only can adjudicate those cases that fall within Article III of the Constitution and a congressional authorization enacted thereunder. Thus, the objection presented by a motion under Rule 12(b)(1) challenging the court's subject matter jurisdiction is that the district court has no authority or competence to hear and decide the case before it. Determining whether to grant a Rule 12(b)(1) motion is made with reference to the standards for asserting subject matter jurisdiction found in various statutory provisions. A Rule 12(b)(1) motion most typically is employed when the movant believes that the claim asserted by the plaintiff does not involve a federal question, and there is no diversity of citizenship between the parties or, in a diversity of citizenship case, the amount in controversy does not exceed the required jurisdictional amount.

Charles Alan Wright & Arthur R. Miller, 5B Federal Practice and Procedure § 1350 (4th ed.).  The Supreme Court has recognized that "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998).  "Jurisdiction is not defeated by the

---

*v. W. Chester Univ.*, 273 A.3d 106, 112 (Pa. Commw. Ct. 2022), *aff'd,* 291 A.3d 349 (Pa. 2023) (cleaned up).

possibility that the averments might fail to state a cause of action on which petitioners could actually recover.  Rather, the district court has jurisdiction if the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another, unless the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* (cleaned up).  "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 611, 666 (1974)).

Here, the GLBA provides no private cause of action.  Accepting all of the allegations in the Complaint as true would not provide a cause of action under the GLBA and one reading of the statute would not result in a favorable decision and another reading an unfavorable decision.  Any reading of the statute simply would not provide a cause of action

21

for the Plaintiff.  Similar to cases where the basis of federal jurisdiction is alleged to be a federal criminal statute, which provides no basis for a private cause of action, dismissal for lack of jurisdiction results.  *See In re Petery*, No. 5:25-cv-0116, 2025 WL 1202056, at *3 (E.D. Pa. Apr. 25, 2025) (dismissing for want of subject matter jurisdiction an action brought under federal criminal statutes and the Federal Trade Commission Act, all of which did not provide a private cause of action); *Robinson v. Trumark Fin. Credit Union*, No. 24-CV-1466, 2024 WL 2249868 (E.D. Pa. May 17, 2024) (finding no subject matter jurisdiction in an action brought under the Federal Reserve Act and federal criminal statutes which provide no private cause of action); *Pinckney v. Somerset Prob. Child Support Enf't*, No. 24-8474, 2025 WL 2346440, at *4 (D.N.J. Aug. 13, 2025) ("[W]ithout any federal statute providing a private cause of action, there is no federal question jurisdiction.") (citing *Berutti v. Wolfson*, No. 22-CV-04661, 2023 WL 1071624, at *5 (D.N.J. Jan. 27, 2023) ("A federal court does not have federal question jurisdiction over a case where a private plaintiff's basis for his claims are statutes that do not authorize private rights of action.") (collecting cases)).

22

Accordingly, Plaintiff's "First Claim For Relief" should be dismissed pursuant to Rule 12(b)(1) for lack of jurisdiction rather than Rule 12(b)(6) for failure to state a claim.

Plaintiff's Second Claim For Relief is brought pursuant to "Federal Trade Communication 15 U.S.C. §45(a), 'Act 5': Prohibition of unfair or deceptive acts or practices in affecting commerce." (Doc. 1, pp. 10-11). In support, Plaintiff alleges:

> Defendant Ehrig, as officer of the bank, surreptitiously and maliciously obtained the Plaintiff's confidential medical information with the intent to use such information against the Plaintiff in the parties' pending divorce. That Defendant Ehrig, as direct manager of Plaintiffs retirement accounts and officer of the bank, chose to publish this information on the bank servers is demonstrative of Defendant's violation of "Act 5."
>
> Defendant Ehrig's actions as Plaintiffs banking relationship manager and as officer of the bank offends Act 5's intent to "prohibit unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. §45(a).

(*Id.* at p. 10, ¶¶ 56-57). The Complaint further alleges that Plaintiff did not authorize Ehrig to "seize" the information and his act of posting it on the bank's servers evidences his acting as a bank officer and his conduct committed was as a bank officer. (*Id.* ¶¶ 58-59). Again, both Defendants argue that the Federal Trade Commission Act (FTCA) does

not provide for a private cause of action.  (Docs. 11, pp. 4-5, 12, pp. 6-7).

In her briefs in opposition to the Motions to dismiss, Plaintiff states:

"while the Plaintiff cites federal laws like the Gramm-Leach Bliley Act

and the Federal Trade Commission Act, they are not cited to create a

cause of action pursuant to federal question jurisdiction."  (Docs. 17, p.

5, 18, p. 5).  She asserts, however, that the FTCA claim is not capable of

being dismissed.  She argues "[t]hat Defendant Ehrig, as officer and

director of Plaintiff's retirement accounts and officer of the bank, chose

to publish [Plaintiff's private medical information] on the bank servers

is demonstrative of Defendant's violation of 'Act 5' and his contractual

duties to the Plaintiff.  Defendant Ehrig's actions as Plaintiff's banking

relationship manager and as officer of the bank offends Act 5 's intent to

'prohibit unfair or deceptive acts or practices in or affecting commerce.'

15 U.S.C. §45(a)."  (*Id.* at p. 7).  Plaintiff avers that she did not

authorize the "seizure" of her personal medical information and that

Ehrig acted in his "official capacity" in posting it to the bank's server.

(*Id.*).  She indicated, however, that "[s]uch actions do not raise federal

questions but rather demonstrate the degree of the contractual and

fiduciary duty owed to the Plaintiff and the egregious breach of those duties." (*Id.*).

There does not seem to be a dispute that the FTCA does not create a private cause of action and the law on the matter is clear. "[I]t is well-established that there is no private cause of action under the FTCA." *Nelson v. Skinfix Inc.*, No. 25-2319, 2026 WL 688378, at *3 (D.N.J. Mar. 11, 2026; *see also Baymont Franchise Sys., Inc. v. Bernstein Co., LLC*, No. 18-620-JMV-AME, 2021 WL 2935426, at *9 (D.N.J. July 13, 2021), *aff'd*, No. 23-1659, 2025 WL 3633151 (3d Cir. Dec. 15, 2025) ("there is no private cause of action under the Federal Trade Commission Act or regulations promulgated thereunder.") (citing *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231 (3d Cir. 1990)); *In re Petery*, 2025 WL 1202056 (E.D. Pa. Apr. 25, 2025) (Federal Trade Commission Act does not provide a private cause of action.); *Bhatt v. Hoffman*, 2020 WL 5593761 (D.N.J. Sept. 17, 2020) ("[T]he Federal Trade Commission Act does not create a private cause of action.")

As with the GLBA forming the basis of Plaintiff's First Claim For Relief, the FTCA, cited in Plaintiff's Second Claim For Relief, provides no private cause of action.  Indeed, Plaintiff asserts in her briefs that

"Such actions do not raise federal questions but rather demonstrate the degree of the contractual and fiduciary duty owed to the Plaintiff and the egregious breach of those duties." (Docs. 17 and 18, p. 7). Nevertheless, the GLBA and the FTCA form the bases of the first two claims raised in the Complaint and the Court must determine whether these cited federal statutes provide it with federal question jurisdiction. They do not. As noted, Plaintiff herself states that "while the Plaintiff cites federal laws like the Gramm-Leach Bliley Act and the Federal Trade Commission Act, they are not cited to create a cause of action pursuant to federal question jurisdiction." (Docs. 17 & 18, p. 5). But because federal question jurisdiction was invoked, (Complaint, Doc. 1, p. 2, ¶ 9), and the GLBA and FTCA (forming the basis of two of the five causes of action) are the only federal statutes cited, the above analysis was necessary to determine whether federal question jurisdiction invoked in the Complaint exists. Having determined that it does not, the remaining claims need to be addressed.[7]

---

[7] Plaintiff has argued that Defendants have mischaracterized her arguments and, as stated several times above, pointing to these federal statutes was meant only to emphasize the egregiousness of the actions that she alleges were done against her. Yet the issue of the Court's jurisdiction remains. Accordingly, if a true federal question exists,

**D. The State Law Claims**

Plaintiff's Third, Fourth, and Fifth Claims for Relief are based on Pennsylvania state law. Those claims are, respectively, breach of Personal Information Notification Act, 73 P.S. §§ 2301-2323, alternatively violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, common law Breach of Contract and common law Intentional Infliction of Emotional Distress. Plaintiff argues in her briefs that embedded in those claims is a claim for "invasion of seclusion" based, again, on Pennsylvania law. Because there is no claim giving rise to federal question jurisdiction, the Court's supplemental jurisdiction cannot be invoked to address these state law claims. The only basis then that would provide jurisdiction to entertain the state law claims would be diversity jurisdiction. However, as fully discussed above, all parties to this action are citizens of Pennsylvania, therefore diversity jurisdiction does not exist. The state law claims, therefore, must be dismissed without prejudice.

---

Plaintiff should be allowed to amend her complaint and plead a proper basis for jurisdiction.

27

## IV.    Conclusion

The Complaint alleges that Defendants caused her a number of harms by improperly taking photographs of her private, protected medical information and posting them (and permitting them to be posted) on the Bank's servers.  Assuming the facts set forth in the Complaint to be true, the Plaintiff might have indeed sufficiently pleaded causes of action cognizable under Pennsylvania law.  However, no cognizable cause of action arising under of the laws or the Constitution of the United States was pled.  Since this case presents no federal question and diversity does not exist, it is respectfully recommended that the Complaint be dismissed.  It is recommended that the dismissal be without prejudice for Plaintiff to file an amended complaint alleging a cognizable federal claim or to pursue her claims in state court.

## V.    Recommendation

Based upon the foregoing, it is respectfully recommended that:

1.  Defendant Ehrig's Motion to Dismiss for Lack of Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) (Doc. 8) be GRANTED.

2.  Defendant F&M Trust's Motion to Dismiss for failure to state a claim (Doc. 9) be DENIED AS MOOT.

3.  The case be dismissed without prejudice and Plaintiff be granted leave to either file an amended complaint or pursue her claims in state court.

Dated: April 15, 2026                **/s/ Leo A. Latella**
                                     Leo A. Latella
                                     United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINE L. LINE, | CIVIL NO. 1:25-CV-01477 |
| Plaintiff, | |
| v. | (Judge Mehalchick) |
| FARMERS AND MERCHANTS TRUST CO. d/b/a F&M TRUST as subsidiary of FRANKLIN FINANCIAL SERVICES CO. and SCOTT D. EHRIG, individually and in his capacity as Senior Vice President, Chief Wealth Management Officer for F&M Trust, | (Magistrate Judge Latella) |
| Defendants. | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the forgoing **Report and Recommendation** dated April 15, 2026.

Any party may obtain review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall

30

specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 15th day of April, 2026

**/s/ Leo A. Latella**
Leo A. Latella
United States Magistrate Judge